Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have one appeal to hear this morning. Nance versus the Commissioner. Each side has 30 minutes. Mr. Friedlander, who represents Mr. Nance, has saved 10 minutes for rebuttal. Counsel, we're familiar with your cases. We've read your briefs, the authority cited in your briefs, and at least portions of the record, so you should feel free to get straight to the heart of your argument. We probably will have some questions for you. As you know, some written questions were posed to you in advance of this oral argument, and if you're finishing an answer to a question from the court, you may you may do so when the red light shines. Do be mindful of our time, but you can nevertheless finish answering the question even if the red light is shining. So we'll begin with you, Mr. Friedlander. Will you please speak with us? Good morning. May it please the court, Matt Friedlander on behalf of the District Court. Mr. Nance appeals the District Court's erroneous dismissal of his as-applied method of execution claim brought pursuant to 42 U.S.C. Section 1983. Before we really get into the issue's brief, though, which explained how the District Court erred in its statute of limitations analysis and its misapplication of the Rule 12b6 standard, I want to address the question raised by the court about two weeks ago, which is whether Section 1983 is the appropriate procedural vehicle for this claim. And it is. Mr. Nance does not dispute the constitutionality of his sentence of death. Rather, he disputes the constitutionality of the method of his execution as applied to him. The court, the Supreme Court, and this court in McNabb have made clear the method of execution challenges are cognizable in 1983 and not habeas. The reason is that the method of execution claims challenged the means of carrying out a sentence and not the constitutionality of the death sentence itself. The Supreme Court has explained, though, that it might be different if the method of execution that is being challenged would foreclose an execution at all under present law. This issue basically was first addressed by the Supreme Court in Nelson v. Campbell, but there the lethal injection method of execution challenge, lethal injection protocol challenge, was about the particular method of lethal injection, and the argument for the petitioner was that a lethal injection could be carried out in a constitutional manner, but not in the manner that the state intended to do it. As I understand Mr. Nance's argument, the problem is that he appears to argue that he cannot be charged with a lethal injection. The Supreme Court has said in Nelson and more recently in Buckley that if that's the argument, then the proper procedural vehicle may be in habeas, it may be an attack on the sentence itself. Could you tell me why that's not, have I got the law wrong or what's wrong with that? I think, Your Honor, you're absolutely correct in saying Nelson and then more recently in Buckley, Judge Justice Gorsuch did raise this issue in a parenthetical. One thing, I wouldn't characterize Mr. Nance's request for relief that he not be executed by lethal injection, although that is a practical implication of it. Rather, the relief requested is that he not be executed in an unconstitutional manner. And I think that the possibilities that were raised by the opinion for the court in Nelson and by Justice Gorsuch's opinion in Buckley was that if that's the practical effect, that there can't be an execution carried out under present law, then that may be in habeas. I mean, that's one thing that's interesting about the parenthetical is that, you know, habeas might be. Well, they couldn't decide it because it wasn't before, they allowed, that was a possibility. Correct, Your Honor. The issue was not actually before them in Buckley because the nitrogen hypoxia alternative method was authorized by statute. Yeah, so my problem is, what I'm trying to figure out is, well, whether what the Supreme Court has told us might be a problem in a different case is that this is the case. This is an example of the case. I understand, Your Honor. You know, this is and I agree this is a case where front and center before the court is the notion that the alternative method is not statutorily prescribed. And I think there are a couple of responses as to why this is not actually cognizable in habeas. First is we have to look back at the history of method of execution claims, particularly Nelson and Hill. And remember that the concern in Hill and Nelson was always lingering in the background was, is the litigant using this method of execution claim as a subterfuge to actually challenge the validity of their death sentence? And the Supreme Court always had a problem with that. And in Bayes and Glossop, they addressed those concerns and and tried to temper the issue with having the alternative method of execution pleading requirement. And I think what Justice Gorsuch was saying in his parenthetical was was more or less a gentle reminder that litigants shall not use method of as applied method of execution claims, even when the alternative proposed is not statutorily statutorily prescribed, that those that you know, the litigant should not then use that as a subterfuge to challenge their sentence of death. And Mr. Nance is not doing that here. The allegations of the complaint, he does not allege that his death sentence should be vacated. I All right. So Buckley said if the relief sought in a section 1983 action would foreclose the state from implementing the inmate sentence under present law, then recharacterizing a complaint as an action for habeas corpus might be proper. So when would that be proper? And how is that distinguishable from your case? I think a couple of things to unpack there, Your Honor. First, I will note that Justice Gorsuch's parenthetical of Hill took two sections of Hill that are a couple of paragraphs apart and kind of reverse them. And maybe that wasn't exactly the holding of Hill that underpresent law language. In any event, I think there are two situations that would require habeas relief. First would be where a litigant affirmatively alleges that his sentence must be vacated because there's no statutorily authorized method of execution. So if Mr. Nance had alleged in his complaint that had gone further and said, under Georgia law, lethal injection is the only method of execution prescribed, and then in his request for relief, said not only that the state should be enjoined from executing me by lethal injection, but the state shall not execute me at all, because there is no legally authorized method. That is a clear indication that he's challenging his actual conviction. The second... So I understand your client hasn't done that. But the practical effect is that if he gets the relief he requests, it would foreclose the state from I don't... I wouldn't concede that, Your Honor. I think... How would it be done? Likely by legislative action. Under... What does underpresent law mean? Exactly. I don't know what... I don't know what underpresent law means. If we assume that underpresent law means whatever the current statutory law is, then we'll... So... Just assume for me that that's what that means. I will. I will. Let me say one thing first, Your Honor. I don't want to... You're not going to answer my question? I am going to answer it right after this. I do not want to concede that underpresent law means under... Okay. I'm not saying you're conceding it. I'm saying assent it for the purpose of my question. If it means your question, then it is difficult to conceive practically. You know, I respect that there is a tension there. Then we've got to figure out whether this is one where it may be proper to recharacterize it as a petition for writ of habeas corpus. See, I just... I don't think we can get there from that, you know, this underpresent law language. You know, one reason being that it... I mean, let's be clear. Mr. Nance has done everything he was supposed to do here. He has brought a colorable claim. The allegations of the complaint, which we expect to prove the veracity of, are more than sufficient to satisfy the Bayes-Glossop standard for avoiding a cruel and unusual execution. And then in Bucklew, the court said, you have to propose a viable alternative method, which has been done here. So it would be just... If the state, though, has a legitimate reason for not using that alternative method, which it seems to me they clearly do here. You know, your alternative, proposed alternative is the firing squad, given how easy it is to understand why the state of Georgia would not use that method. That would foreclose the claim on the merits, it seems to me. But what I'm concerned about is whether we can even get there, because this complaint is not even properly characterized as a 1983 complaint. I think... Your Honor, and again, I understand your concern. I think Bucklew's explicit holding was that the alternative proposed method does not need to be authorized by state statute. I understand that. And giving it one hand, it would not make sense to then gut the court's own holding by saying, oh, but by the way, if you do that, it needs to be characterized as a 1983 complaint. But the court said that this might actually be the problem in a case posing a hypothetical that it looks like we have here. I don't know if we're going to be productive continuing that. I understand... We could, because I have a question. Okay, Judge Larson. The Chief Judge never asked me if I think he's wrong on the law, but I actually don't think we interpret Supreme Court law that way. Our 11th Circuit precedent is clear. We kick people out of court when they bring these actions as a habeas action. And we've said affirmatively, you have to bring them as a 1983 lawsuit. So what is a practitioner to do? And I guess my question is, isn't the precedent in our circuit that you bring these method of execution claims pursuant to a 1983 action? And has the Supreme Court told us that it's wrong to do that? Your Honor, I agree with you 100% with what you said. And I don't believe that Justice Gorsuch's parenthetical would allow this court to deviate from the prior precedent rule. Like I said earlier, McNabb... Well, tell me this. Are any of those precedents of our court, this circumstance, where the practical effect is you can't carry out the sentence under current state law? Have any of our precedents about the propriety of doing this through 1983 involved this circumstance? And if so, which ones are? I am aware of no 11th Circuit case in which that was the circumstance. But I would direct the court's attention to Justice Kavanaugh's concurrence in Bucklew, where he addressed Justice Gorsuch's parenthetical, the actual holding of Bucklew, saying that it doesn't need to be authorized by statute, and making clear that firing squad is the very type of alternative method that should be... That would survive a motion to dismiss scrutiny under that precedent. And it's telling, too, because in Missouri, firing squad... Missouri is the case from which Bucklew arose. This inmate was a Missouri inmate. That state does not authorize firing squad by statute. Very few states do. But Justice Kavanaugh... And not only that, the Attorney General of Missouri conceded that had the litigant alleged firing squad as the alternative method of execution, that that would have been acceptable. And that was a 1983 claim. We had the Attorney General conceding that, and we have Justice Kavanaugh recognizing that that would be an appropriate... That firing squad would be an appropriate alternative, which is not authorized by state statute, and that the claim was still cognizable under Section 1983. So that's probably the best authority. But I think what Judge Martin is getting at is Justice Gorsuch's parenthetical dicta cannot change... Cannot abrogate brining prior precedent of this court. And the reason... Well, that's why I asked whether any of those precedents address this circumstance, and you just told me they don't. Well, they address the general rule that method of execution claims shall be brought under Section 1983. I don't think... They can only... The holdings can only go so far as the circumstances before the court. That's why I asked, do we have any precedents about this circumstance? And you said no. Right? And that is... There is no case with the exact factual circumstance, but I would disagree that the holding in those cases is limited. No reasonable litigant would have brought this as a habeas petition, given the 11th Circuit and prior precedent. And I think that's what Judge Martin is getting at, is Mr. Nance is doing exactly what the 11th Circuit and Supreme Court has told him to do. It doesn't make sense for him to have been... The problem we have... I mean, I'm not really trying to be tough, Mr. Friedlander. We originally thought that our court originally held that these were in habeas. Nelson v. Campbell said, wrong. 1983 is the appropriate vehicle. But it left out... It had this caveat, right? And we've tried to faithfully apply Nelson since then. We even said, well, you can't use as an alternative method something that's not currently permitted under state law. Buckley said that was wrong. Our precedents about that have been abrogated. We're constantly trying to make sure that our precedents conform to Supreme Court precedent. And that's what I'm concerned about here. I'm not in any way trying to say that Mr. Nance was wrong to think that the right way to characterize his complaint is one as a civil rights complaint under 1983. But I tried to read the Supreme Court cases carefully, and the Supreme Court said what it said both in Nelson and in Buckley that left open this possibility that there might be a circumstance where it is properly characterized as habeas. And I'm wondering, is this that circumstance? And you agree with me. None of our earlier precedents, which have gone back and forth in terms of what the Supreme Court says the proper law is, none of ours involve this materially similar circumstance. And your honor, I appreciate your concern, and I don't think you're being hard on me. I think we both wish Justice Gorsuch had been a little clearer than simply stating this, that maybe it's under habeas in a parenthetical. But I think, here's what I think, I really think here's what Justice Gorsuch was saying, and here's an example of something that would arise under habeas. If, let's say, Mr. Nance prevails ultimately on his claim, which we expect he will, the state of Georgia then can, they can still execute Mr. Nance by legislative act. There's no doubt. The Georgia Constitution authorizes the General Assembly to pass statutes regarding criminal punishment, and the state of Georgia would still be able to execute Mr. Nance. But if Mr. Nance, and let's say Georgia says, okay, we're going to execute him by firing squad. If Mr. Nance were to then file a subsequent claim challenging the very proposed alternative method as unconstitutional, or as prohibited by present law, then that is execution. And I think that's an example of what Justice Gorsuch was worried about, was the litigant prevailing, and then turning around and challenging. You want to address the district court truly, but you've only got a couple of minutes. I don't want you to get away from doing that. That's okay, and I will note that I think even if it is cognizable under habeas, it is not a Supreme Court precedent in Panetti. And we are happy to brief. Although it might be barred by a one-year statute of limitations instead of a two. We would be happy to address that in supplemental briefing, Your Honor. As for the merits of the claim, you know, this is, it's important to note what this appeal is not. It is not an appeal from a last-minute motion for stay, and this is not some kind of cockamamie claim invented by Mr. Nance. In fact, the factual predicates giving rise to this as-applied method of execution challenge come from the government. You would agree, right, that ordinarily you have to bring this kind of 1983 complaint when the death, either when the earlier, either when the death sentences are imposed, actually the later of whether when the death sentences hasn't been imposed, or the method of execution has been changed in some manner by the state. That's ordinary. You characterize this as an as-applied challenge. Correct. Because you say that there's something about your client's personal circumstances that have since changed that make that current method in Georgia unconstitutional as applied to him. But if you're going to characterize it that way, even if that, we can talk about whether that's a viable theory under our precedents, but even if it is a viable theory, don't you have to allege enough to us to tell us how and when the circumstances changed, and how does this complaint do it? So, I think the complaint does allege how and when the circumstances changed. It says, it alleges explicitly that in April of 2019, a state physician, or a state, a state employee informed him that we're going to have to be that kind of subjective awareness. I mean, it can't be that. I mean, there's got to be something that, when did he, when did he have a vein, a problem with the veins? As alleged in the complaint, his veinous condition rendering his execution unconstitutional, he did not become aware of until April of 2019. And I think, your honor, what you're suggesting is that, well, we have to, essentially, we have to plead around the statute of limitations affirmative defense. No, I think you have to plead an as-applied challenge. And I think we've more than done that, your honor. I think we have affirmatively alleged when he became reasonably aware that his veinous condition would render his constitution, his execution unconstitutional, combined with the increased use of gabapentin. All of that occurred less than a year before he filed the complaint. And, you know, it's critical here, your honor. He didn't become aware of- He was using that drug well before, right? He began using it in April 2016, but- Yeah, and he had the veinous condition well before then, too, right? No, your honor. I don't think you can glean that from the complaint at all. Well, then, that's my concern. Don't you have some obligation to plead if this is an as-applied challenge when that happened? I think, your honor, we have, we need to, I agree, we need to allege the factual circumstances that made him aware of the unconstitutionality of it. I don't think we need to affirmatively plead around the statute of limitations affirmative defense. That's where I think I disagree. Okay. You've gone over, but you've saved all your time for rebuttal. You were answering questions from the court. Why don't we hear from Mr. Malcolm? Thank you, your honor. May it please the court. My name is Clint Malcolm. I represent the appellee in this matter. Just to get directly to that first question from the court in its recent order, our position would be that this should be reconstrued as a habeas petition based on our looking at the Supreme Court precedent and our interpretation of that precedent. As I think it's been alluded to in appellant's argument here this morning, this is a very unique circumstance that has not come up before directly to this shouldn't be recharacterized. The proper time to recharacterize it would be if the Georgia legislature changed its method of execution to the firing squad, Mr. Nance's proposed alternative, and then he were to challenge that under the 8th amendment, then that would be properly considered a habeas petition. What do you say about that? Well, your honor, if you look directly to the language of the complaint and what you have to look at is what relief the complaint seeks and how that interacts with whether this is a challenge to the death sentence itself or just a more traditional 1983 challenge to the manner in which it's carried out. And the complaint I think indisputably pleads that the state of Georgia cannot execute Mr. Nance by lethal injection under current state law. Lethal injection is the only statutory means of execution in Georgia. And obviously, as you alluded to, Chief Judge Pryor, the state of Georgia would have a very legitimate penological reason not to implement an alternative procedure of execution. I only raised that because that seems to be a bar on the merits to a 1983 complaint. But if this is properly regarded or construed as a habeas petition, then I think we're into new problems. You're saying you think it is properly construed as a habeas petition. That's not something the state has argued before, but now candidly, in response to the questions from the court, you think, oh, this may be exactly what Judge Justice Gorsuch was talking about. But if that's true, then is it second or successive? Well, to go back to that first question, just briefly, Your Honor, yes. After looking at it, as I said, this is a unique circumstance that hasn't presented itself before. So this is looking at the rationale from those Supreme Court cases. You've mentioned Nelson v. Campbell, Hill v. McDonough, and most recently Bucklew. This is a circumstance where they are pleading and asking for relief that the state of Georgia, if they were to prevail, would prevent the state of Georgia from executing Mr. Nelson. Mr. Malcolm, you agree. I think we've already established that Bucklew did not address this question. That's absolutely true. All we're talking about is a parenthetical that Justice Gorsuch included in describing Hill. And, of course, for that reason, you never argued that this should have been brought as a habeas. That's a correct statement, Your Honor. We had not. I think, candidly, that this was a situation until we got this order from the court that we've grown accustomed to dealing with these in 1983. It would have been malpractice not to bring it as a 1983. Well, I wouldn't go that far. Under the precedent of the court. I wouldn't go that far because this is a unique circumstance. And while the prior precedents are applicable, of course, to everyone, but they are applicable to the circumstances in those cases, which were all cases involving challenges to the execution protocol. So in Nelson v. Campbell, it was a challenge to the cut down procedure in that state. However, it was not even contested that the state could still execute that inmate by lethal injection. The same thing. By the same token, Bucklew doesn't address it either. I mean, you're distinguishing these other cases saying they don't address this particular situation that we have here, but neither does Bucklew. No, that's correct. Bucklew did not address it. I think it couldn't address it because this issue wasn't before it. I think the opinion was looking down the road, potentially to a circumstance like we have now, where a death sentence inmate files a complaint, asks the court to completely enjoin the state from executing a death sentence inmate under its only method of execution under state law. And that's what we have here. It's a unique circumstance. There are other states have alternative execution protocols on the books and under their state laws. Georgia has lethal injection. That is the means of execution under state law. And then the protocol is more of an administrative matter carried out through the Department of Corrections. So, can I just direct you to the order that's actually on appeal here? Sure. Do you agree with me that the district court made findings of fact in ruling on this motion to dismiss? Is there a specific finding of fact you're looking at, Judge? I mean, there's several. For example, when the court says, I find this claim is false, is that construing the evidence? I mean, the allegations in favor of the person, the non-moving party? Well, that statement in and of itself, out of context, I don't think it would. But I think looking at the district court's order... You say you don't? Oh, okay. You don't think... No, I don't. I think the district court applied the correct standard, both in regards to here we are... You do? So, I mean, here's what Judge Boulay did. In response to plaintiff's claim, state's plaintiff's claim, that the IV team is in the execution chamber. So, this increases the likelihood of drag on the tubes going into his body. This court finds the claim is false. I mean, you cannot properly do that as a district judge when you're construing pleadings in a 12B6 setting, can you? Right. But I don't think the district court went on to say that they applied the wrong standard for a Rule 12B6 dismissal. I think they applied the correct standard. They talked about whether there was a plausibility... It's a correct standard. I'm surprised you won't concede this. It's a correct standard to look at the allegations of the No, I'm not contesting that that is the correct statement of the law as you posed it to me. No, I think we would agree on what the correct legal standard is for a Rule 12B6 dismissal. Yes, the facts of the complaint are to be interpreted as true. However, before you get to that point, you have to flesh out legal conclusions. And as the Supreme Court has said, it is not enough just for the complainant to plead a sort of formulaic recitation of the elements. In this case, the Eighth Amendment violation, they'd have to meet those two prongs of the Bayes-Glossop test. So I think our strongest argument in regards to the failure to state a claim, the Rule 12B6 issue in regards to that was their failure to plead a plausible claim for relief in the alternative. I know they pled that the firing squad was... There's a protocol from Utah, but that is basically all they say. And then they say also that the firing squad would cause Mr. Nance less pain than Georgia's lethal injection. And that is in and of itself a conclusion and nothing more than a recitation of the elements, Your Honor. And that's what our also in addition to the statute of limitations defenses that we raised as well. And obviously, those are in a 12B6 pleading context also. I think that... His pleading with regard to the situation with his veins is that he was told for the first time in April of last year that he basically had no veins that the doctor could see or the medical person could see to use. So that's the first time he becomes aware of this problem. I understand that. That is how it was pled in the complaint. He also pled that he first started taking the drug for back pain, I think in April of 2016. Right. Two different claims. But the point I'm trying to make is it seems that both of the ways that appellant wants this court to interpret the statute of limitations is a very subjective sort of when we decide to become aware of the accrual of the two-year statute of limitations. And that's just not founded in the law. I mean, if you look solely first at the drug claim, if you just take what he says in the complaint, which is April 2016 is when he starts taking the drug. Well, he filed the complaint more than two years after. I think the drug claim is an easier one for you to respond to. Going back to the vascular condition issue then, Your Honor, there admittedly are just, other than what you mentioned, that the date he says he was told by the prison officials about his vascular problems, that's the extent of what's pled in the complaint. Well, that's what you're discrediting. That's when he says he learned it. And you're discrediting that in a 12B6 setting? I mean, I guess the district judge did. Well, I would argue there has to be more factual specificity in regards to why he couldn't have become aware of that sooner. Yes, because just as Judge Pryor alluded to, I mean, all he says is, I was told by this prison official, and I forget the month and year, that this was when he became aware they would have problems accessing his veins to execute him by lethal injection. That's all we know. If that's all that has to be pled for an accrual of the statute of I mean, that's what he pled. But I would... May I ask a question? Why would this be more appropriate for purposes of that determination? I could obviously hear your motion to dismiss, but wouldn't it be more appropriate to have discovery to show, let's say, for example, that you have, the state can show that, in fact, he knew prior to April of 2019 that he had a condition, or in fact, that he doesn't have a condition? Sure. I think that's something that could be fleshed out. Certainly, as you said, in discovery, it could be fleshed out in a state habeas. It could be fleshed out in a federal habeas as well. I mean, I think if you... This is obviously a complaint, and we're limited on the record that's before us in this 1983 as it was raised, but this is obviously a death sentence inmate who's gone through all levels of post-conviction review before this. And I think it's very noteworthy to point out that in his federal petition filed over seven years ago, there were issues about intravenous drug use and problems with his veins raised then in an execution challenge in that habeas petition. So this notion that this could never have been raised before is ludicrous, quite honestly, when you look at the totality of everything that's got us to this point. So that's not in this complaint, again. Sure, but I think that also is relevant. I think that issue is also relevant, and I think I neglected to answer the chief judge's question about the successive petition, but I'm coming back. Don't worry, I was going to come back. Okay. Well, I think that's relevant to that as well, because if the argument is... Is it second or successive if it is a habeas petition? Well, looking at the Supreme Court's decision in Panetti, which dealt strictly with Ford claims, I don't think you can expand that and say categorically that execution challenges cannot be ripe at the time of the original habeas, because there's no better evidence for that than looking at Nance's original federal habeas petition, where he raised execution challenges. Not only that, he raised challenges specific to the ones he's raised now as applied in his 1983 complaint, based on his IV drug use. So this issue that this vascular condition has just become known to him is just not correct. And I understand that we're limited in the record before us on this complaint. However, it is very relevant in regards to the question posed most recently, whether this should be reconstituted as a habeas. Because then, if it should be, as we are contending it should, then the next question is, is it a successive petition? And should we make that determination in the first instance? Let's say you're right, that this is second or successive. Okay. Oh, no, wait a minute, that you're right, that this is a habeas petition. I'm sorry. Okay. Should we vacate the order of the district court and remand for the determination of whether it's second or successive? Because the district court didn't consider that first. That's correct, Your Honor, it did not consider that. And playing that legal sort of hypothetical, or what we have here, out to its conclusion, if this is a habeas, then it is by definition a successive one, because he's filed one previously. So there is no jurisdiction. It's not really by definition a successive one, is it? We know that there are some petitions that aren't ripe, that can't be brought when a first petition is filed, and are not therefore considered second or successive, right? That's correct, Your Honor. So it seems to me that, let's say you're right, that this is properly considered a habeas petition, then it seems to me there would be one of two possibilities for us. One is to determine whether we can look at the record and determine, and say with confidence based on this record, that this habeas petition is second or successive or not. Or we would look at it and say, you know, we can't really say, and therefore we're going to vacate and remand for the district court to make that determination in the first instance. Are those the two positions? And if so, which one do we have and why? I think those would be the two situations, Your Honor. I think in this case, it would essentially be a legal conclusion, right? So there wouldn't be any, I mean, in regards to how Panetti was to be interpreted and its rationale, and whether these types of execution challenges are in and of themselves impossible to be ripe at the time of the original habeas. So like I said, I would stand on my argument that no, they are not categorically and inherently unripe at the time of habeas. Is there a circumstance where there could be a factual predicate that couldn't, that may not have been discovered until... Or a forward claim, right? Well, sure, a forward claim or even a claim, you know, in the context of an execution challenge or any type of hypothetical habeas claim that could be learned about after the original petition. However, that's, I think, the basis for the procedural requirements in the successive petition statute, that those would have to be put forth in a prima facie case made to this petition. And then if this court believed that prima facie case had been made, an order would be entered, allowing the district court to consider it. I don't think this rises to the level of a forward claim, which is inherently not ripe until the time of execution. I mean, whether somebody is competent to be executed, you know, cannot be properly litigated until execution is near. But if there's one thing Panetti teaches us, it's that if you don't have information to bring a claim, you know, you can't characterize that, you know, as a second or successive. I don't know that it's necessarily the information, Your Honor, because I look to that one provision of the successive petition statute. That's just one of the things that has to be met to warrant a successive petition, which is the factual predicate claim. And I think that's what we're talking about. And that would have to be shown through the proper channels in regards to meet the successive petition requirements. I think to get around the entire successive petition rule, like in Panetti, like an afford type of claim, and like this court has at least opined about in Tompkins, an execution delay type of challenge. Both of those obviously deal with things that could not have been dealt with before the time of execution. We have a factual circumstance, at least as it's pled in this complaint, that petitioner or appellant says he couldn't have learned about until, you know, 2019. I mean, that's what... Did not learn about until... Right. That's what's said in the complaint. So that's the factual predicate provision. They would have to make a case for that along with the other requirements of that statute for it to go forward as a habeas. That would be my argument. And can we talk about the merits of the claim, which is... My understanding is that Nance has to allege sufficient facts to state a positive claim that a firing squad is a feasible and readily available method of execution. That's correct, right? Yes, Your Honor. Has he done that? No, Your Honor. And this is why. When he gets to that second prong of his complaint, there are admittedly more facts in regards to his vascular condition and the use of the drug and how those would potentially affect him at execution. But when he gets to the alternative portion, the complaint is truly barren of sufficient, plausible, factual pleading. There is a... They plead the Utah protocol. There are no details about the protocol included in the complaint. It is simply surmised that Georgia has enough weapons and enough people to carry out firing squad. And I would suggest to this court that that's simply not enough to plausibly say that it is beyond conceivability and rises to the level of plausibility that the state of Georgia, just by saying that, can carry out firing squad. That it is readily implemented and feasible to do so. The Utah protocol is not before this court in the record. However, I would again surmise that the protocol is a little more detailed than that, than get some guns, get some people, and execute the inmate. Georgia, it seems... How are we to evaluate this? So, if we look at the merits of this 1983 complaint, let's say we're not considering it a habeas petition. We think there's not a statute of limitations problem. If Georgia has a legitimate reason for not using the firing squad, the Supreme Court says, then it seems Mr. Nance's complaint fails. How do we know whether Georgia has a legitimate reason not to use firing squad? Is it enough to just say it's regarded, commonly regarded as a more barbaric method of execution? I don't know that that in and of itself is enough, Your Honor. It may be. But as you said, if we were... What is it then? If it's not that, what is it? That's what I'm trying to figure out. That is one of the factors. There would also be factors such as Georgia's never carried out execution in that manner. They've never attempted to. There's only been three executions in that manner since 1976, all from one state. So, I think the legitimate penological reasons, I mean, we haven't even gotten to the point because of where we're at in this case of pleading those defenses in an answer. We're at the motion to dismiss stage. You moved to dismiss for failure to state a claim, right? Yes, that is correct, Your Honor. This was one of the arguments that was made in the district court, right? We did make that argument that the complaint doesn't address that at all, just like it beyond the one date for the vascular condition, becoming aware of complainant, becoming aware of that. There's nothing in the complaint to address the firing squad issue. I mean, it seems to me the Supreme Court of the United States and Bays recognized that the firing squad is a less humane method of execution when contrasted with lethal injection. What it said was, the Supreme Court said in Bays, the firing squad hanging the electric chair and the gas chamber have each in turn given way to more humane methods culminating in today's consensus on lethal injection. That's what the Supreme Court said, right? That's exactly right. And of course, I think... There was an extensive record in Bays. There'd been much discovery done on the methods in Bays, correct? I believe that's correct, Your Honor. And there is none here. I mean, there's been no discovery, right? The assertion, though, of the Supreme Court about the alternative methods being less humane, was that something about which the consensus of society that those are less humane methods? Was that something that the court was making a finding, a fact about? I don't think so, Your Honor. I think that that is a more of a legal issue that is not really disputed, that there's a reason lethal injection is the primary. Well, I mean, Mr. Nance disputes it. Well, I understand that, but what I'm saying... That's already here. He doesn't dispute it in the complaint. He doesn't specifically plead that firing squad in and of itself is more humane than execution. He says it's... Moreover, execution by firing squad is both swift and virtually painless. Sure. I mean, that's from his complaint. Right. And I would respond to that in saying that's not enough plausible facts to get him past his pleading burden under the law in regards to that second prong of the Bay's Glossop test. And that's really what I would focus on in our briefing before we got the most recent order in regards to the district court's adjudication of this motion to dismiss. There is absolutely nothing in the complaint that plausibly pleads any facts as to why this and how this method of execution, if Georgia could in fact carry it out, which it cannot, would cause him less severe pain than lethal injection. Just say it's virtually painless and a swift death based on Utah's protocol. And Georgia has lots of guns and people that could carry it out. That is, in essence, the gist of what... And that is, in essence, an element of the claim for relief that he has to show. That is... Or to have a viable claim for relief. Yes. And my argument is that is nothing more than a formulaic recitation of that second element. It is not a sufficient pleading of plausible facts to satisfy that here at the motion to dismiss stage. So that would be the strongest argument I would rely upon from that. But to go back to Judge Pryor's question, I don't think there's any... I mean, I know Mr. Nance is saying that firing squad would be a more humane way to execute him, but you cannot ignore the fact that the states throughout this country that carry out executions use lethal injection as their primary protocol and that the court, the United States Supreme Court, the highest court of this land has, in fact, said there is a legitimate reason for that. So that cannot be ignored. That is sort of the elephant in the room that the legitimate penological interest the state of Georgia would have is obvious. And that is the reason it's not an alternative protocol here. Well, the Supreme Court tells us that we have to consider whether the state has a legitimate reason for not using that method. Is that something that the Supreme Court's made clear to us one way or another, whether it can change from case to case and depends on a highly intensive factual inquiry and fact finding so that, you know, one day a district judge in Georgia defines as a matter of fact that the firing squad is, in fact, a more humane method of execution, but a judge in Missouri could conclude that lethal injection is the more humane method of execution. And we could get completely contradictory rulings from those courts that the Supreme Court would say, oh, well, that's fine. They didn't have a legitimate reason in Georgia for not using the firing squad, but they did in Missouri. And it's all dependent on fact finding. I think that's a possibility. Sure, Your Honor. Well, I mean, hypothetically, that's possible. But in this case, the unique... And when the Supreme Court tells us we're supposed to determine whether the state has a legitimate reason for not using that alternative method, does it work that way? Is that the way the inquiry works for the legitimate reason? Well, I think that would be something more on merits analysis. So in regards to the pleading stage of where we're at in this case, I would stand on that they have not pled anything in regards to that issue under Bayes and Glossop in regards to the legitimate... Well, Judge Barton just read to you the part of the complaint where he alleges that it's swift and painless. Is that not enough? No, I don't think that's enough. Well, there's more. I didn't read all of it. I know, I know. I'm not saying you did. I'm just saying, but I mean, there are allegations in the complaint about that, aren't there? Sure, there are some bare bones allegations about that. Yes, Your Honor. I don't dispute that. And there's been no discovery about the reasons Georgia would have for not doing a firing squad. There hasn't been discovery in this case. No, we're at the pleading stage, Your Honor. It's kind of my point. Well, I would just conclude by saying back to the original question of habeas versus 1983, the legal issue there is the effect of the relief Nance seeks. And he is, I think, unequivocally asking and asked the district court to enjoin the state of Georgia from executing him by lethal injection. And that firing squad was the only appropriate alternative. Based on state law, that is, in essence, if he were to win and get that relief, the state of Georgia would not be able to carry out that death sentence in any manner under lethal injection. So that— Under present law. Under present law, under current state law. That's correct, Your Honor. So that's the problem I have. And that is the argument I would make, Your Honor. Okay. If there are no further questions, thank you. Anyone else have any questions? Okay. Mr. Friedlander, you've reserved 10 minutes for rebuttal. Thank you, Your Honor. I want to very briefly just—I want to talk about the habeas stuff again. Just very briefly draw the court's attention to the Fifth Circuit case and Ray Smith. I believe it was unpublished, but it's case number—Fifth Circuit case number 17-4390, where they—where the inmate brought this type of alternative—non-statutory alternative claim under habeas and the court reversed and said the Buckley parenthetical can't change our prior precedent on this rule. And I think that would be persuasive authority for how to handle the question now. I also—I want to talk more about whether it's second or successive. You know, Mr. Malcolm said, well, by definition, it's second or successive. You know, I said, I think the court pointed out, no, that's not—that's not the case. Panetti made clear that second or successive is a term of art, and it's a legal term, whether something's second or successive. So the mere fact that he filed a habeas back in 2013 that was adjudicated in 2017 doesn't mean that even if this is characterized as a habeas claim, that it is second or successive. Have you read Magwood? I have, Your Honor. You know, Justice Kennedy said in Magwood that the way that the majority had characterized Panetti basically limits Panetti to forward claims. I don't think that— Do you think Justice Kennedy was right about that? I don't think that's what Justice Kennedy was saying. And if it is what he's saying, I think he's wrong. I think Panetti is not specifically limited to forward claims. And what Panetti said was that if something—if the factual predicate for the habeas claim is not right until the actual execution is carried out, then the claim is not second or successive. And we really have an analogous situation. Let me read you what Justice Kennedy said in Magwood, at page 351. He said, the best that can be said is the court is limiting its new doctrine, so it has no applicability to previously unexhausted forward claims, confining the facts of that case. That's what he said. I understand that that's what Justice Kennedy said. Worth noting, it was a dissent. I understand that. Of course, he wrote Panetti, right? Yes. Yes. But—and I think what he was saying in his dissent—you know, even if that—we're going to take that for exactly—for face value, for what it means. Well, I usually try to take Supreme Court opinions for face value. Me too, Your Honor. Both majority and dissenting opinions. I think this case is actually factually indistinguishable from something like a forward claim in the sense that Mr. Nance, his physical condition is—it's fluid, as was any inmates. And the question of whether his—he has the physical constitution to withstand lethal injection cannot be determined until the date of execution. So much like the way that a forward claim only ripens upon execution and someone's fluid mental condition, the question here is the same exact analysis, except it involves Mr. Nance's circulatory integrity rather than his mental health and competency. But, I mean, I don't think that's a material— Mr. Friedlander, how would the district court properly consider the accrual issue? It seems to me that it can't be, that just being told by a medical technician at the prison, hey, you've got this problem, can be the standard. That sounds too subjective to me. You know, if you know—if the prisoner knows he is under a sentence of death, he knows that he has a problem with his veins, as I understand it, as a result of drug abuse, right? Right? That's not in the complaint, Your Honor, but that is— That's the case, though, here, isn't it? You want it to go back to the district court. I'm just trying to figure out what the district court's going to have to do, okay? That's what's going to come out, right? You know the history of this litigation. I mean, certainly, I think what you're saying, Your Honor, is this court should reverse the complaint, the dismissal of the complaint, and then as discovery proceeds, the government— Mr. Friedlander, don't—let's not play games, okay? I'm just trying to get to the head of it to figure out what the district court would do, okay? If it goes back, the district court's going to have to figure out what the proper accrual date would be, okay? Correct. And that's a factual inquiry. Yeah, okay. Let's—I'm going to take it—I'm going to take it your theory, okay? He knows he's under a sentence of death by lethal injection. He—at some point, he knows he has a vein problem, right? Correct. He's known that quite a while, hasn't he? No, Your Honor. No, okay. He has only known— He has had no earlier filings in state court, for example, that describe a vein problem? He did not know he had a vein problem that would render his execution unconstitutional until— No, that's not my question. Did he know that he had a medical condition that made it difficult to access his veins? I don't know, Your Honor. And you don't know that from his previous filings in state court? I don't, Your Honor. Okay. Let's say he did. And he starts using this drug that, when in combination with that problem with his veins, makes his risk of being—suffering excessive pain as a result of his execution by lethal injection intolerable. If the question is an objective one, what puts a reasonably prudent person on notice that, hey, I need to ask a question about this? If I take this drug, what's that going to do in the event that my sentence is carried out? Isn't that really what the inquiry has to become? And I think, Your Honor—I mean, that is the inquiry, but it is a factual inquiry. I understand. I'm just trying to understand how it would work under your theory. So I think that the standard would be that an as-applied challenge to a state's method of execution claim accrues when the plaintiff discovers, or should reasonably discover, that the unique factual circumstances that render his execution unconstitutional. So the question—I think the standard should be, it's not when Mr. Nance knew that maybe he had a vein condition. The question is, when did he become reasonably aware? When should he have known that his vein condition had degraded to the point that it would render his execution unconstitutional? And I think the answer to that question is that that happened no earlier than April of 2019. And whether—you know, let's say the government—let's say you're right, you're correct in your assumption, Your Honor, that there is evidence that Mr. Nance was an IV drug user, and in the past he knew he had problems with his veins. If that's true, certainly that is evidence that would be adverse to Mr. Nance in a reasonability determination in construing the affirmative—the statute of limitations affirmative defense. But it's not dispositive. And it's ultimately a fact— Although it might be if the district court makes a finding of fact against you. Yeah, depending on—if the district court had sufficient evidence to make a finding of fact that it was unreasonable as a matter of law, the district court could do that. We would likely appeal such determination because I don't think that there would be sufficient evidence to make that kind of fact. Oh, that's—okay, all right. So— Do we have any other questions before his time expires? Okay. With my last—if it's all right—with my last 50 seconds, Your Honor, just back to the merits. You can even take a few more. Okay, thank you. Um, you know, I think Judge Martin hit the nail on the head. Some of Judge Legault's questions, too. A lot of the questions that the court is raising and that the state is advancing are questions that need to be resolved with discovery. Is there a penological interest? When did Mr. Nance reasonably become aware that his venous condition would render his execution unconstitutional? Those are all factual questions that need resolution with discovery, which says exactly why a 12 v. 6 dismissal was inappropriate in this case. Um, I could talk for days about this, Your Honor, but the time is up. So I appreciate the time's court, and we ask that you reverse the dismissal of this complaint. Thank you. Thank you, Mr. Friedlander. We are adjourned for today. Thank you very much. Thank you, both of you. Thank you, Your Honor. Well done. Thank you.